UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

WANDA TIMMS                                       :     Index No.:
                                                  :
                                Plaintiffs,       :        COMPLAINT
                                                  :           AND
                                                  :       JURY DEMAND
                 – against –                      :
                                                  :
CITIBANK, N.A.                                    :
                                                  :
                                Defendant.        :
                                                  :
------------------------------------------------------------- X

Plaintiff WANDA TIMMS, by her attorneys, CAMBA Legal Services, Inc. and

Bromberg Law Office, P.C., as and for their complaint against Defendant

CITIBANK, N.A. ("Citibank"), allege as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff, Wanda Timms ("Plaintiff" or "Ms. Timms") brings this civil

action against Defendant Citibank, N.A. ("Defendant" or "Citibank"), a national

bank, for its failure to conduct a good faith investigation of Plaintiff's dispute of

fraudulent and unauthorized transactions on her Citibank account, limit Plaintiff's

liability for the fraudulent and unauthorized transactions in accordance with

applicable laws and regulations, provide Plaintiff with copies of all documents that

Citibank relied on to conclude that there was no error or fraud, and for other

-1-

misconduct, in violation of the Electronic Fund Transfer Act, 15 U.S.C. § 1963 et seq., and the rules and regulations thereunder; New York General Business Law § 349; and state common law.  As a result of Defendant's failure to comply with its legal obligations, Plaintiff lost thousands of dollars.

2.      Plaintiff seeks damages, along with injunctive relief, reasonable costs and attorney's fees.

## PARTIES

3.      Ms. Timms, the Plaintiff, is 31 years of age and resides at 287 Webster Avenue, Apt. 2D, Brooklyn, NY 11230.  Until recently Ms. Timms' sole sources of income was Social Security Disability ("SSD") and Supplemental Security Income ("SSI"). Combined, Ms. Timms received approximately $850.00 per month. While on SSI and SSD Ms. Timms was able to put herself through both college and graduate school, recently graduating from the New School.

4.      Ms. Timms is a "consumer", as the term is defined by 15 U.S.C. § 1693a(6) of the EFTA and Regulation E, 12 C.F.R. § 205.2, because she is a natural person who has an account held by a financial institution and who was issued an access device by that financial institution and entered into an agreement for the provision of electronic fund transfer services with that financial institution.

5.      Defendant, Citibank, is a national banking association with branches all around the New York metropolitan area, including a branch at 885 Flatbush Avenue, Brooklyn, NY 11226.

6.     Citibank is a "financial institution", as the term is defined by 15 U.S.C. § 1693a(9) of the EFTA and Regulation E, 12 C.F.R. § 205.2(i) because it is a national bank and directly or indirectly holds an account belonging to a consumer or issues an access device and agrees with a consumer to provide electronic fund transfer services.

## JURISDICTION AND VENUE

7.     This action arises under the Electronic Fund Transfer Act, 15 U.S.C. §1693 et seq., ("EFTA") and the rules and regulations thereunder.  Title 15 U.S.C. § 1693m(g) provides that civil actions brought under the EFTA may be commenced in any United States District Court without regard to the amount in controversy. The district courts have supplemental jurisdiction over Ms. Timms New York State common law and statutory claims because they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *See* 28 U.S.C. § 1367(a).

8.     Citibank does business at its branch located at 885 Flatbush Avenue, Brooklyn NY, 11226, in the Eastern District of New York, and, accordingly, venue is proper in this district pursuant to 28 U.S.C. § 1391(c).

## FACTS

### *THE ACCOUNT'S HISTORY.*

9.      Ms. Timms is a 31 year old African American woman who lives in Borough Park, in Brooklyn.

10.      Ms. Timms opened the Citibank account in question about 6 years prior to the fraudulent activity while she was in college.  Ms. Timms opened the account so she could have her Social Security directly deposited and to pay bills.

11.      At no point did Ms. Timms lose or misplace her ATM card nor did she lose, misplace or share their personal identification information or access codes.

12.      Beginning in late March of 2017, an unknown fraudster began withdrawing money from Ms. Timms' account taking money from her Social Security and her tax refund.  Shortly after that a number mobile deposits were made to Ms. Timms account.  These deposits were based on past checks that Ms. Timms previously deposited in her account many months prior.  During this time a $600.00 fraudulent check was also deposited in Ms. Timms account at a Citibank branch.

13.      The following transactions and balances were recorded on the plaintiff's Citibank checking account from March 20,2017 to March 28, 2017:

*Timms Citibank checking account (ending in 8150 ) Fraudulent Transaction*

*Summary March 20, 2017 Through March 28, 2017*

| Transaction Date | Credits | Debits | ATM Location | Transaction Description |
|---|---|---|---|---|
| 3/20/17 | $0.00 | $82.00 | 13 Newkirk Plaza ATM | Fraudulent Withdrawal |
| 3/21/17 | $0.00 | $82.00 | 13 Newkirk Plaza ATM | Fraudulent Withdrawal |
| 3/23/17 | $0.00 | $62.00 | 13 Newkirk Plaza ATM | Fraudulent Withdrawal |
| 3/27/17 | $0.00 | $82.00 | 13 Newkirk Plaza ATM | Fraudulent Withdrawal |
| 3/28/17 | $0.00 | $82.00 | 13 Newkirk Plaza ATM | Fraudulent Withdrawal |

14.    As indicated above, on March 20, 2017, an unknown fraudster executed series of fraudulent transactions, without the knowledge or consent of Ms. Timms. The fraudster withdrew money from Ms. Timms checking account via five withdrawals from an ATM at 13 Newkirk Plaza.

15.    Ms. Timms learned of the fraud and made her first fraud dispute to Citibank on or around March 28, 2017 by calling Citibank and informing them of the fraud. At this time, Ms. Timms worried about more fraud, and requested a new debit card. This card was provided to Ms. Timms.

16.    A few days later, on April 4, 2017 additional fraud began on Ms. Timms' account. In addition to new unauthorized withdrawals, a number of mobile deposits were posted to Ms. Timms' account. These deposits looked like prior legitimate deposits that Ms. Timms had made months prior. In addition a

fraudulent check was deposited at a Citibank branch in the amount of $600.00. These illegitimate deposits were accompanied by more unauthorized withdrawals, many from multiple ATMs on the same day and some using the same ATM multiple times.

17.     This fraud took almost all of Ms. Timms money from her, and resulted in the imposition of numerous bank fees, additionally the fraud caused Ms. Timms account to become overdrawn and Citibank closed the account.

18.     These fraudulent transactions are summarized below.

*Timms Citibank checking account (ending in 8150 ) Fraudulent Transaction*

*Summary April 4, 2017 Through April 18, 2017*

| Transaction Date | Credits | Debits | ATM Location | Transaction Description |
|---|---|---|---|---|
| 4/4/17 | $0.00 | $101.00 | 911 Coney Island Avenue ATM | Fraudulent Withdrawal |
| 4/5/17 | $0.00 | $61.85 | 911 Coney Island Avenue ATM | Fraudulent Withdrawal |
| 4/5/17 | $0.00 | $61.85 | 911 Coney Island Avenue ATM | Fraudulent Withdrawal |
| 4/7/17 | $191.28 | $0.00 | Mobile Deposit Already Deposited Months Prior | Fraudulent Deposit |
| 4/7/17 | $318.82 | $0.00 | Mobile Deposit Already Deposited Months Prior | Fraudulent Deposit |
| 4/7/17 | $0.00 | $160.00 | 880 Coney Island Avenue ATM | Fraudulent Withdrawal |
| 4/7/17 | $0.00 | $200.00 | | Fraudulent |

| | | | | |
|---|---|---|---|---|
| | | | 880 Coney Island Avenue ATM | Withdrawal |
| 4/10/17 | $191.28 | $0.00 | Mobile Deposit Already Deposited Months Prior | Fraudulent Deposit |
| 4/10/17 | $255.05 | $0.00 | Mobile Deposit Already Deposited Months Prior | Fraudulent Deposit |
| 4/10/17 | $0.00 | $182.00 | 13 Newkirk Plaza | Fraudulent Withdrawal |
| 4/10/17 | $0.00 | $202.00 | Akstar Inc. | Fraudulent Withdrawal |
| 4/11/2017 | $255.05 | $0.00 | Mobile Deposit Already Deposited Months Prior | Fraudulent Deposit |
| 4/11/2017 | $0.00 | $62.00 | Akshar Inc | Fraudulent Withdrawal |
| 4/11/2017 | $0.00 | $101.85 | 911 Coney Island Avenue ATM | Fraudulent Withdrawal |
| 4/11/2017 | $0.00 | $202.00 | Akshar Inc. | Fraudulent Withdrawal |
| 4/12/2017 | $191.28 | $0.00 | Mobile Deposit Already Deposited Months Prior | Fraudulent Deposit |
| 4/13/2017 | $600.00 | 0.00 | Fraudulent Check Deposited at a Citibank Branch | Fraudulent Deposit |
| 4/14/2017 | $191.28 | $0.00 | Mobile Deposit Already Deposited Months Prior | Fraudulent Deposit |
| 4/17/2017 | $191.28 | $0.00 | Mobile Deposit Already Deposited Months Prior | Fraudulent Deposit |
| 4/17/2017 | $191.28 | $0.00 | Mobile Deposit Already Deposited Months Prior | Fraudulent Deposit |
| 4/17/2017 | $191.28 | $0.00 | Mobile Deposit Already Deposited Months Prior | Fraudulent Deposit |

| 4/17/2017 | $191.28 | $0.00 | Mobile Deposit Already Deposited Months Prior | Fraudulent Deposit |
|---|---|---|---|---|
| 4/17/2017 | $0.00 | $102.00 | 1503 Newkirk Avenue | Fraudulent Withdrawal |
| 4/17/2017 | $0.00 | $201.85 | 911 Coney Island Avenue | Fraudulent Withdrawal |
| 4/18/2017 | $191.28 | $0.00 | Mobile Deposit Already Deposited Months Prior | Fraudulent Deposit |
| 4/18/2017 | $0.00 | $181.85 | 911 Coney Island Avenue | Fraudulent Withdrawal |

*Ms. Timms' Fraud Disputes, Police Report, and Defendant's Corresponding Responses*

19.   **The First Fraud Dispute.** On or around March 28, 2017, Ms. Timms discover the unauthorized withdrawals from her account. When she discovered these withdrawals she immediately called Citibank to cancel her card and protect her account. When she spoke to Citibank on the phone she disputed the fraudulent charges.

20.   **The Second Fraud Dispute.** Ms. Timms received a new card but did not re-set up the Citibank app for her phone. When Ms. Timms did this a few weeks later she discovered a new set of fraudulent transactions on her account. As discussed above, these fraudulent transactions were much more extensive and included multiple withdrawals, unauthorized unexplainable deposits, and a

-8-

fraudulent check.  When Ms. Timms discovered these transactions she called the bank again and they again cancelled the card.  A few days later, panicked and concerned about paying her rent and other bills Ms. Timms when to a Citibank branch for help.  Ms. Timms spoke to a Citibank representative who told her to file a police report.

21.     *The Police Report.* On May 1, 2017 Ms. Timms filed a police report with the 70th Precinct.  In that report, Ms. Timms detailed the same fraudulent activity that is described in detail above.  Ms. Timms also spoke with a police officer named "Darryl" who gave her his card.  Ms. Timms has made multiple attempts to follow-up with "Darryl" and help the investigation any way she can but the number on the officers card is not in service.

22.     *Citibank's Letters in Response to the First Dispute.*  In response to her Ms. Timms first dispute Citibank sent Ms. Timms two letters, a letter March 29, 2017 acknowledging her dispute and a letter dated April 11, 2017 rejecting her claim.  The basis of Citibank's rejection was that Ms. Timms card was not out of her possession, that a pin was required, and that the account activity was consistent with normal banking activities.

23.     The first two reasons for rejection Ms. Timms' fraud dispute; that the card was in Ms. Timms possession and a PIN was used are not an appropriate basis for the rejection of a fraud claim. The Office of Comptroller of Currency ("OCC") has

made this clear in its 2014 compliance handbook for the Electronic Fund Transfer Act. https://www.occ.gov/publications/publications-by-type/comptrollers-handbook/electronic-fund-transfer-act/pub-ch-efta.pdf. Highlighting that institutions cannot reject claims based on these facts because fraudulent means like "shoulder surfing" that allow fraudsters to obtain this information. The OCC is explicit, "Therefore, institutions cannot assume that they have satisfied their duty to investigate simply by concluding that the customer's debit card and PIN were used in the transaction at issue." at page 25.

24.    *Citibank's Letters in Response to the Second Dispute.*  Like the first dispute, Citibank's response to the second dispute was to reject Ms. Timms claim. Citibank again relied on the same form letter stating that the claim was rejected because the card was not out of Ms. Timms possession, a PIN was used, and the activity was consistent with normal banking activities.

25.    Citibank again rested it decision on these factors even though the first two are no the proper basis of a denial and the third, that the banking activity is "normal" is untrue as it is not normal to make multiple consecutive ATM withdraws one after the other.

26.    *Ms. Timms ' Continued Disputes.*  Ms. Timms continued to try to get Citibank to reverse the fraudulent transactions so she could put her life back

together.  In May 2017, Ms. Timms made number of calls to Citibank's billing department to try to figure out what was going on.

27.    On or around May 23, 2017, at Citibank's request, Ms. Timms sent Citibank a detailed letter explaining the fraud. This letter included a breakdown of all the fraudulent transactions and a narrative description of what occurred.

28.    The letter also gave information about the police report but did not include the report because the New York Police Department told Ms. Timms there was a charge for the report, which Ms. Timms could not pay because her account was closed.

29.    Citibank did not substantively respond to Ms. Timms letter so Ms. Timms sought help from Housing Works, a non-profit Ms. Timms had received services from in the past.  Geoffrey Wertime, an attorney at Housing Works drafted a letter on Ms. Timms behalf on June 7, 2017.  This letter again explained the fraud in detail, included the police report, and requested Citibank perform a proper investigation.

30.    It does not appear Citibank responded to this letter.

31.    Finally, in September of 2017, Ms. Timms send a letter to Citibank explaining the fraud and requesting that Citibank reinvestigate and provide her with the documents that were the basis of the bank's decision.  This letter was sent

certified mail return receipt requested and, like the prior letters received no response.

32.     Citibank's action took a large emotional toll on Ms. Timms. This all occurred during Ms. Timms' graduation from graduate school, the culmination of years of very hard work rising from tough circumstances to receive an advanced degree.  Instead, of celebrating, Ms. Timms, was preoccupied with getting her money back and worrying about paying her rent and other bills.  This caused Ms. Timms to lose sleep, and suffer from high anxiety, during this time Ms. Timms was depressed and worried about what would happen next.

## LEGAL FRAMEWORK

33.     Plaintiff has causes of action under the Electronic Funds Transfer Act and the rules and regulations thereunder and New York State common law.

### *ELECTRONIC FUND TRANSFER ACT*

34.     The Electronic Fund Transfer Act of 1978, 15 U.S.C. § 1693 et seq., is intended to protect individual consumers engaging in electronic fund transfers.  See § 1693(b) ("The primary objective of this subchapter [...] is the provision of individual consumer rights.")

35.     An "unauthorized electronic fund transfer" is defined in the EFTA as "an electronic fund transfer from a consumer's account initiated by a person other

than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit", § 1693a(12), except for an electronic transfer "(A) initiated by a person other than the consumer who was furnished with the card, code, or other means of access to such consumer's account by such consumer, unless the consumer has notified the financial institution involved that transfers by such other person are no longer authorized, (B) initiated with fraudulent intent by the consumer or any person acting in concert with the consumer, or (C) which constitutes an error committed by a financial institution." *Id.*

36.     In regard to the EFTA, the term "unauthorized electronic fund transfer" includes a transfer which is initiated by someone who obtained the access devise from the consumer through fraud or robbery.  12 C.F.R. § 205.2(m), Supp. I (Official Staff Interpretation on §205.2(m)(3), (4).

37.     An "access device" is defined in the EFTA as "a card, code, or other means of access to a consumer's account, or any combination thereof, that may be used by the consumer to initiate electronic fund transfers."  12 C.F.R. § 205.2(a)(1).

38.     An "access device" becomes and "accepted access device" when the consumer "Requests and receives, or signs, or uses (or authorizes another to use) the access device to transfer money between accounts or to obtain money property, or services [...]". 12 C.F.R. § 205.2(a)(2)(i).

39.     A financial institution is required to investigate consumers' claims of error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten days.  15 U.S.C. § 1693f(a).

40.     If a bank decides to deny a claim of error, it must explain its findings and, upon the consumer's request, provide the consumer with copies of the documents it relied upon in its investigation to conclude that an error did not occur. 15 U.S.C. § 1693f(d); 12 C.F.R. § 205.11(d).

41.     If a consumer reports to her bank that an unauthorized electronic funds transfer has occurred through use of a bank debit card, the consumer's liability for the unauthorized transfer is limited to $50 if it is reported to the bank within two business days after the consumer learns of the loss. 15 USC § 1693g(a).

42.     Under the EFTA, a consumer has no liability when an unauthorized transfer appears on the consumer's monthly statement and is reported by the consumer to the financial institution within sixty days or when an unauthorized transfer does not involve an accepted access device or when the financial institution has not provided a means to identify the consumer.  12 C.F.R. § 205.6(b)(3).

43.     The federal regulations promulgated pursuant to EFTA § 1693b are found in Part 205 of Subchapter A of Chapter II of Title 12 of the Code of Federal Regulations and are known as "Regulation E".  See 12 C.F.R. § 205.1(a).  The stated purpose of these federal regulations is to carry out the purposes of the EFTA, the

primary objective of which "is the protection of individual consumers engaging in electronic fund transfers." 12 C.F.R. § 205.1(b).

44.   Consumers may recover actual damages under the EFTA, 15 U.S.C. § 1693m(a)(1), plus an additional sum of from $100 to $1000, § 1693m(a)(2)(A), plus the costs of the action and a reasonable attorney's fee, § 1693m(a)(3). Treble damages may also be awarded if the court finds that a financial institution "did not have a reasonable basis for believing that the consumer's account is not in error." § 1693f(e).

### FIRST CLAIM FOR RELIEF
(Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.*)

45.   Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein..

46.   This claim arises under the Electronic Fund Transfer Act (EFTA) and Regulation E because it relates to unauthorized and fraudulent electronic transfers.

47.   Defendant violated the EFTA and Regulation E. Defendant's violations include, but are not limited to: failing to conduct an investigation of Ms. Timms' claims of error; failing to provide Ms. Timms with an explanation for Defendant's denial of plaintiff's fraud claims; failing to return improperly withheld account funds associated with plaintiffs' fraud claims,; and, failing to provide Ms. Timms with documentation regarding Defendant's denial of plaintiff's fraud claims,

even after Timms' requested the same.  These actions are in violation of 15 U.S.C. §§ 1693f, 1693g and 12 C.F.R. §§ 205.6, 205.11.

48.     As a direct and proximate result of Defendant's violations of EFTA and Regulation E, Plaintiff has sustained actual damages equal to at least $2,283.10, plus such other damages as may be determined by the court. Ms. Timms is entitled to recover actual damages under the EFTA, § 1693m(a)(1), plus an additional sum of from $100 to $1000, 15 U.S.C. § 1693m(a)(2)(A), plus the costs of the action and a reasonable attorney's fee, § 1693m(a)(3).

49.     As a direct and proximate result of Defendant's violations of EFTA and Regulation E, Plaintiff suffered compensable harm, including actual damages and emotional distress.

50.     Because Citibank lacked a reasonable basis for denying Ms. Timms fraud claims, Ms. Timms is also entitled to recover treble damages, which amount to at least $1,349.85.  See § 1693f(e).

## SECOND CLAIM FOR RELIEF
(N.Y. Gen. Bus. Law § 349)

51.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

52.     New York prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state [...]" N.Y. Gen. Bus. Law § 349(a).

53.     An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349(h).

54.     Defendant violated § 349 of the New York General Business Law by using deceptive acts and practices in the conduct of its business.

55.     Defendant's violations include, but are not limited to, telling Ms. Timms that Citibank would investigate her fraud claims and then failing to conduct a thorough investigation.

56.     Defendant's conduct has a broad impact on consumers at large.

57.     Upon information and belief, Defendant's conduct is directed toward consumers at large.

58.     Upon information and belief, Defendant has a pattern and practice of rejecting claims of unauthorized transactions because the customer's ATM card or debit card and PIN were used in the transaction. Relying on such facts is insufficient to establish that a transaction was authorized because fraudulent means may have been used to obtain the customer's account number, card, or PIN.

59.     As a direct and proximate result of Defendant's violations of N.Y. Gen. Bus. Law § 349, Ms. Timms has sustained actual damages amounting to at least $2,283.00 – representing fraudulent and unauthorized ATM withdrawals and charges levied by Citibank – plus such other damages as may be determined by the Court. Ms. Timms is also entitled to receive treble damages, injunctive relief, punitive damages, attorney's fees and costs. N.Y. Gen. Bus. Law § 349(h).

### THIRD CLAIM FOR RELIEF
(Unjust Enrichment)

60.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

61.     Defendant has been unjustly enriched and benefited from the inequitable acts alleged in this Complaint, by its failure to exempt Ms. Timms from liability for fraudulent and unauthorized activity on their account.

62.     Defendant has reaped profits and revenues resulting from its unlawful conduct.

63.     It would be inequitable to allow Defendant to retain any of the proceeds derived from its unlawful conduct.

64.     Defendant should be compelled to disgorge all proceeds received by it for the unlawful acts described in this Complaint which have inured and continue to inure to its unjust enrichment.

## FOURTH CLAIM FOR RELIEF
### (Breach of Contract regarding Plaintiffs' Citibank's bank account agreement)

65.   Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

66.   Upon information and belief, Defendant entered into a standard bank account agreement with Ms. Timms that governed the terms of their bank account.

67.   Upon information and belief, the bank account agreement included a similar guarantee that consumers will not be held liable for fraudulent transfers and withdrawals made by others using their account.

68.   Upon information and belief, Defendant breached this contract by holding Ms. Timms liable for the fraudulent transfers and withdrawals made by an unknown thief or thieves using her bank account.

69.   As a result of Defendant's unlawful actions, Plaintiff incurred damages in an amount to be determined at trial, plus such other damages as may be determined by the court.

70.   Defendant has reaped profits and revenues resulting from its unlawful conduct.

71.   It would be inequitable to allow Defendant to retain any of the proceeds derived from its unlawful conduct.

72.     Defendant should be compelled to disgorge all proceeds received by it for the unlawful acts described in this Complaint which have inured and continue to inure to its unjust enrichment.

FIFTH CLAIM FOR RELIEF
(Breach of Duty of Good Faith and Fair Dealing)

73.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

74.     Section 1-203 of New York State's Uniform Commercial Code imposes an obligation of good faith in the performance of any contract.

75.     Section 4-103 of New York State's Uniform Commercial Code further states that no bank may disclaim responsibility for its own lack of good faith or failure to exercise ordinary care in the performance of its obligations.

76.     Furthermore, New York law provides that all contracts contain an implied covenant of good faith and fair dealing in the course of performance.

77.     Defendant breached this duty, and indeed acted in bad faith, by holding Plaintiffs liable for the fraudulent and unauthorized ATM deposits, ATM withdrawals, and overdrafts on Ms. Timms' account.

78.     As a result of Defendant's breach of the duty of good faith and fair dealing, Plaintiffs are entitled to damages in an amount to be determined at trial.

-20-

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.     Enter judgment for Plaintiff on all causes of action;

2.     Enter an injunction requiring Defendant to comply with the Electronic Fund Transfer Act and to train its employees accordingly;

3.     Enter an injunction requiring Defendant to cease and desist from pursuing negative action, including the charging of fees, collection activities, and negative reporting to consumer reporting agencies, as a result of its own failures to comply with the Electronic Fund Transfer Act and its own account agreements;

4.     Award actual, statutory, consequential, and punitive damages to the Plaintiffs;

5.     Award reasonable attorney's fees and costs to the Plaintiffs; and,

6.     Award such other and further relief as may be just, equitable, and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury.

Dated: Brooklyn, New York

March 16, 2018

Respectfully submitted,

By: Matthew Schedler
One of Plaintiff's Attorneys

Attorneys for the Plaintiff
Brian L. Bromberg
Bromberg Law Office, P.C.
Standard Oil Building
26 Broadway, 21st Floor
New York, NY 10004
(212) 248-7906

Matthew A. Schedler
*Of Counsel to*
CAMBA Legal Services
Elizabeth Miller, Esq., General Counsel
885 Flatbush Avenue, Suite 202
Brooklyn, NY 11226
(718) 940-6311 ext. 79284